GURNEY *v.* UNION TRANSFER & STORAGE CO.

*(Superior Court of New York City, General Term.* February 6, 1890.)

1. CONTRACTS—INTERPRETATION—AMBIGUITIES.

Plaintiff transferred his business as a warehouseman, including accounts due for storage, to defendant company, in exchange for its stock, under an agreement contained in a resolution of the board of directors of defendant which recited that it had appeared that the value of the plant and accounts offered by plaintiff for his stock was too high, and that it was mutually agreed that plaintiff should be en-

titled to $3,658 worth of the company's stock, and that "all further errors found in the accepted accounts from hence shall be a charge against his stock." *Held*, that the "further errors" related to errors in accounting, such as mistakes of fact or calculation, and not to an erroneous estimate of the value.

2. SAME—CONDITIONS.

Plaintiff was not bound to aver that no "further errors" had been found, as that fact was not a condition precedent to his recovery, but was matter of defense.

INGRAHAM, J., dissenting.

Appeal from special term.

Action by Enoch H. Gurney against the Union Transfer & Storage Company. From a judgment for plaintiff, and from an order denying its motion to strike therefrom a provision for an additional sum as costs and for a stay of proceedings, defendant appeals.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*Henry C. Andrew*, for appellant.    *A. C. Fransioli*, for respondent.

SEDGWICK, C. J.    The action was brought to compel the defendant to issue to plaintiff a certificate that he was entitled to shares of capital stock of the defendant to the nominal amount of $3,658.14, under a resolution of the board of directors made June 16, 1888.    The resolution was: "Whereas, it has appeared to the satisfaction of the company and of Mr. Gurney that the estimated value of the plant and accounts offered by Mr. Gurney for his stock was too high; and whereas, the company has assumed certain additional liabilities of Mr. Gurney as set forth in his account to date,—it is hereby mutually agreed between the company that, in consideration of the less value paid in by Mr. Gurney as above stated, and the additional liabilities assumed by the company as aforesaid, he, the said Mr. Gurney, shall be entitled to $3,658.14 worth of the company's stock, par value, and the rest of the $10,-000 be turned into the treasury.    It is further agreed that all further errors found in the accepted accounts from hence shall be a charge against his stock. This settlement includes the $274.38 already agreed upon as consideration in the purchase of the good-will of Mr. Gurney's business."    The plaintiff had judgment that the defendant issue to him stock to the normal amount of $3,600. The principal difference between the parties relates to the meaning of the phrase, "all further errors found in the accepted accounts from him shall be a charge against his stock."    The plaintiff does not deny that the amount of "further errors" should be deducted from the amount of shares of stock just mentioned,—that is, $3,658.14,—and that the company was bound to issue certificates of shares only to the amount of the difference.    The dispute relates to the meaning of the words, "further errors found in the accepted accounts from hence."    The defendant argues that the errors intended included an erroneous estimate of the value of the accepted accounts, as well as mistakes of statement or computation in the accounts, which would make them erroneous, as accounts.    The plaintiff argues that the errors were only such as make errors in accounting, like mistakes of fact or calculation.    The court agreed with the plaintiff, but nevertheless allowed the defendant to give full proof of what the defendant claimed to have been an erroneous estimate of the value of the accepted accounts.    These accounts related to the business of the plaintiff as warehouseman, and were statements of the amounts due to him by third parties for storage.    As security for the payment of these amounts were the goods stored.    To show the value of these accounts, the defendants sold, under the statute, the goods stored.    Assuming that the proof on this subject showed the value of the security, there was yet to be ascertained the value of the original obligation of the owners to pay the storage.    There was no proof on this point.    As the case stood, the owners remained liable for the amount of the storage, less the value received upon the sales.    The presumption of law is that these owners were solvent, and could

be made to respond.   The defendant, therefore, failed to prove that the valuation of the resolution was erroneous.   The defendant did prove that there were mistakes of statement and computation in the accounts.   The court deducted from the amount agreed to be issued these mistakes.   The learned counsel for defendant argues that, under the complaint and resolution, there could be, on a view unfavorable to the defendant, judgment for the issuing of shares to the amount of $3,658.14,—no more and no less.   I do not perceive the validity of this proposition.   The plaintiff fails as to quantity, because the defendant establishes a modification of plaintiff's claim.   It is also argued that the complaint is defective because it does not aver that no further error had been found.   This is not correct, because the not finding of errors was not a condition precedent to the acquirement of the cause of action for such number of shares as the plaintiff was entitled to have issued to him, and the lessening of the number of shares to which the defendant might be entitled was founded upon an independent stipulation, upon which the defendant should take an affirmative stand.   It was also objected to the complaint that it did not aver that the property turned over to the company by the plaintiff for the shares was worth $3,658.14.   This was not essential to the validity of the agreement.   The mere fact that property is not worth the amount of the shares is insignificant, if the estimates of the value are made in good faith.   The answer does not allege that there was any intent to evade the statute.   It was further urged that the amount of $3,658.14 was in part made up of sums that were allowed as due to the plaintiff, whereas, in fact, they were not due to the plaintiff from the defendant.   One of these sums was for salary which the plaintiff credited himself with, when, as defendant now claims, no salary was due to him.   Whatever may be the rights of the parties as to these sums, and in particular that claimed for salary, the answer alleged no defense based upon the plaintiff taking the sums or the salary.   The answer confines itself, in respect of the value of the property transferred by plaintiff, to an assertion of an erroneous estimate of the accepted accounts, or to errors in the accounts.   The case showed that there was no mistake or error, even if there were invalidity in the settlement between the parties, as to the company allowing the plaintiff certain amounts when it was not liable to the plaintiff, and the answer makes no allegation as to this.

It is also argued that the "accepted accounts" were not necessary for the business of the defendant, and for that reason the directors had not power to issue stock for them.   Such a defense was not made.   If it had been pleaded, it could not have prevailed, under the circumstances.   The accounts were incidents of the business that the plaintiff transferred to the defendant, and the transaction of that kind of business was within the power of the defendant.

The defendant's counsel urges that, as the agreement is contained in a resolution which was passed at a meeting of directors, the plaintiff being present and voting for the resolution, it is void.   The answer avers and the testimony shows that he did vote.   The answer does not attempt to avoid the contract for this reason, and the contract could not be avoided without restoring to the plaintiff what he had transferred.   There was no offer to restore, and, indeed, restoration was impossible from the manner in which the defendant had dealt with the property.

The defendant set up as a defense that after the making of the contract in question the defendant passed a resolution that no certificates of stock should yet be issued to any stockholder.   The plaintiff did not bind himself to omit to demand his shares of stock, and, if before the resolution his right to shares was perfect, the defendants could not diminish or annul his right, and absolve themselves from their obligation by resolving to do so.   I am of opinion that there was no error during the trial.

FREEDMAN, J., concurs.

INGRAHAM, J., *(dissenting.)* I am unable to agree with my associates in the conclusion to which they have arrived, that this judgment should be affirmed. It was at least doubtful whether the "further errors" mentioned in the agreement of June 16, 1888, related to the amounts that could be realized from the accounts, or errors in the method by which the amounts due had been determined. If plaintiff had transferred to defendant certain accounts which represented debts to him secured by the personal property which was deposited with him on storage, and had represented that such accounts were good and collectible, and that the property upon which he had a lien for the several amounts due him was sufficient security, for which the defendant had agreed to pay him $10,000, to be applied in payment of a subscription for that amount of the capital stock of the company, and that it subsequently appeared that such representation was false as to the collectibility of a portion of the accounts, and the parties had deducted the amounts that up to that time had been ascertained to be uncollectible, and then fixed the amount of stock to which the plaintiff was entitled from the accounts before transferred, but providing "that all further error found in the accepted accounts from hence shall be a charge upon his stock," it would be, I think, clear that the "further errors" would be errors of like character to the ones that had been corrected by the agreement of June 16, 1888. The defendant offered to prove the original agreement, whereby plaintiff subscribed to the stock of the defendant; offered to show the terms of the subscription, and the representations made by plaintiff as to the value of the business,—of the value of the plant turned over; as to the value of the accounts receivable; and that there was a shrinkage in the accounts. All of this evidence was excluded, and the defendant excepted. Defendant also offered to show the condition of things that had occurred up to the agreement of June 16, 1888, upon which the cause of action was based, which was excluded by the court, and to which the plaintiff excepted. I think all of this testimony was material, and necessary to enable the court to determine the meaning of the words, "further errors in the accepted accounts." Several other questions are presented which are not free from doubt, but I think it clear that the exclusion of the evidence before referred to required that there should be a new trial.

## MOTION TO STRIKE OUT.

SEDGWICK, C. J. It is general practice for a referee to make an additional allowance by a provision in the conclusions of law in an equity case. The action involved the plaintiff's right to shares, and to a certificate as evidence of his ownership of them. Their value was shown by the testimony in the case when it appeared that the defendant agreed to transfer the shares in consideration of receiving property from plaintiff agreed by the parties to be of the nominal value of the shares to be transferred. It was within the discretion of the court to refuse to stay the proceedings without security from defendant. The judgment and order should be affirmed, with costs.